IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LORI ALLAIN,<br>　　　　　Plaintiff,<br><br>　　v.<br><br>MARK D. MILLER, individually; and<br>MARK MILLER CUSTOM BUILDER<br>ENTERPRISES LLC,<br>　　　　　Defendants. | CIVIL ACTION<br><br><br><br>NO.  22-03131 |

MEMORANDUM

HODGE, J.                                                                                            October 5, 2023

I.      INTRODUCTION[1]

This matter is before the Court on Lori Allain's ("Plaintiff" or "Ms. Allain") request for damages (ECF No. 33) following an entry of Default Judgment (ECF No. 32). Ms. Allain brought sexual harassment, sex discrimination, assault and battery, and lost wages claims against her former employer, Mark D. Miller and Mark Miller Custom Builder Enterprises LLC ("Defendants"), arising from Defendants' offensive, pervasive, and severe verbal, physical, and sexual misconduct towards Ms. Allain over the course of her employment, culminating in Defendants' wrongful termination of Ms. Allain on the basis of her sex. (ECF No. 1.)

Default was entered by the Clerk of Court (ECF No. 11) and the Court granted Plaintiff's Motion for Default Judgment (ECF No. 32). A damages hearing was held on April 20, 2023. (ECF Nos. 26, 34.) The Court ordered supplemental briefing and documentation as to damages. (ECF Nos. 32-33, 39.) Now, upon consideration of Ms. Allain's Motion for Default Judgment (the

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

1

"Motion") (ECF No. 15), taking into consideration the totality of the circumstances established through Ms. Allain's credible, sworn testimony and documentary evidence provided in open court during the damages hearing and subsequent supplemental evidence filed with the Court (ECF No. 33, 39), for the reasons discussed below, the Court finds Defendants jointly and severally[2] liable to Ms. Allain for damages in the total amount of **$490,319.14**. This includes: (1) $35,010.38 in lost wages; (2) $200,000 for pain and suffering; (3) $200,000 in punitive damages; (4) $54,176.00 in attorney's fees; and (5) $1,132.76 in costs. The Court further awards post-judgment interest at the rate of 5.33% pursuant to 28 U.S.C. § 1961.[3] An appropriate Order follows.

## II.     BACKGROUND

### A.     Findings of Fact

In January 2020, Ms. Allain was hired by Mr. Miller as his administrative assistant. (ECF No. 1 at 3.) Mr. Miller is the owner and principal of a contracting company, Mark Miller Custom Builder Enterprises, LLC, (*id.* at 2), and ran his business out of his home, where Ms. Allain reported to work. (ECF No. 18.) Ms. Allain is domiciled in New Jersey, Mr. Miller is domiciled in Pennsylvania, and Defendant Mark Miller Custom Builder Enterprises, LLC (the "Entity Defendant") is a Pennsylvania LLC with a principal place of business in Pennsylvania. (ECF No.

---

[2] This Court has held that a sole owner of an LLC and an LLC may be jointly and severally liable where the actions of the sole owner and of the LLC are essentially one in the same. *See, e.g. Joe Hand Promotions, Inc. v. Verzella*, No. 18-2321, 2019 U.S. Dist. LEXIS 188865, at *10 (E.D. Pa. Oct. 31, 2019) (finding sole owner of LLC and LLC jointly and severally liable for copyright infringement where the sole owner controlled the actions giving rise to the claim, and he and the LLC directly benefitted from those actions). Additionally, under Pennsylvania law, "[a] defendant's liability in [an intentional tort action] shall be joint and several, and the court shall enter a joint and several judgment in favor of the plaintiff and against the defendant for the total dollar amount awarded as damages[.]" *Bert Co. v. Turk*, 298 A.3d 44, 71 (Pa. 2023) (quoting 42 Pa.C.S. § 7102(a.1)(3)(ii)).

[3] *See Selected Interest Rates*, FEDERAL RESERVE, https://www.federalreserve.gov/releases/h15/ (last visited Sept. 12, 2023).

15 at 5; ECF No. 18.) Ms. Allain initially worked 3 hours per week at $50 per day but began working full time for Mr. Miller in May 2020 for $48,175 per year. (ECF No. 15-1 at 1; ECF No. 33 at 2.)

Shortly after Ms. Allain was hired, Mr. Miller began verbally harassing and abusing her on a daily basis. (ECF No. 15 at 3.) He propositioned her for sex, offered her money to walk around naked, and sent her unwanted, sexually explicit text messages[4] despite her repeatedly asking him to stop this inappropriate conduct. (ECF No. 1 at 5-11.) Mr. Miller made lewd comments about Ms. Allain's dress and appearance; he purchased revealing clothing and tried to force her to wear it; pressured her to discuss her sex life despite her refusal to do so; lied about having sex with her to other people. (*Id.*) He also walked around naked in his home office, exposing himself to Ms. Allain against her will. (*Id.*)

Mr. Miller's sexual harassment quickly escalated from heinous comments and text messages to physical assault and battery. He regularly exposed himself in the workplace, and inappropriately touched Ms. Allain. (*Id.* at 5-7.) Mr. Miller waited unclothed for Ms. Allain to arrive at work and called her into another room where he was nude on a bed touching his genitals. (*Id.* at 7.) He also placed his exposed penis on the table where she was completing a work task and demanded she "look at it." (*Id.*) He threatened Ms. Allain with physical harm and touched her inappropriately. (*Id.* at 10.) On one occasion, he "jumped on top of her" while she was on the couch and began "humping" her. (*Id.* at 8.) On another occasion, while inspecting a client's house for a renovation project, Mr. Miller "cornered [Ms. Allain]," "threw [her] onto the bed," "jumped on top of her" and refused to get off. (*Id.* at 8-9.) Mr. Miller regularly "massaged" Ms. Allain's

---

[4] The text messages Mr. Miller sent to Ms. Allain with inappropriate photographs of himself and vulgar, sexual comments are attached as an exhibit to her Motion. (ECF No. 15-1.)

3

shoulders while she was seated and if she tried to leave, he restrained her or shoved her. (*Id.*) On multiple occasions he touched her breasts. (*Id.*) Ms. Allain always rejected Mr. Miller's advances and consistently told him to stop when he acted this way. (*Id.* at 8-10.) However, when she tried to physically remove herself from the situation, Mr. Miller physically restrained her by grabbing her shoulders or legs. (*Id.* at 8.)

Mr. Miller's behavior sexually offensive behavior continued culminating in or around April of 2021. Mr. Miller entered the room where Ms. Allain was working and "placed his hand on her back and said, 'Just stand there, while I come on your back.'" (*Id.* at 9.) When Ms. Allain turned around, Mr. Miller said, "It's a pretty penis, isn't it?" (*Id.* at 9-10.) Ms. Allain was shocked, yelled for him to stop, and ran out of the room. (*Id.*) Mr. Miller then came up behind her again, put his hand on her back again, and laughed at her. (*Id.*) Plaintiff turned to see Miller stroking his genitals. (*Id.* at 9.) Plaintiff yelled at Mr. Miller to "stop" and "get away." (*Id.*) Mr. Miller became angry, stormed away, and told Ms. Allain to "get the fuck out." (*Id.* at 10.) He then told her to get her last check, called her a "freeloader" and, using vulgar language told her not to come back. (*Id.*) While she was driving home, Mr. Miller called Ms. Allain and told her she was moved to sales, which did not require her to report to his home office. (*Id.*) He also reduced her schedule to three days per week, stating that she "turn[ed] [him] on too much" and he "could not be around her." (*Id.*) Shortly after making this arrangement, Mr. Miller changed his mind and told Ms. Allain to report to his home office again. (*Id.*) Around May 20, 2021, Ms. Allain reported to the workplace. Mr. Miller was angry with Ms. Allain regarding her work and made aggressive and threatening gestures, nearly hitting her in the face. (*Id.*) Ms. Allain asked him to stop, but he would not. (*Id.*) Finally, Mr. Miller left the room and shouted, "get the fuck out and don't come back." (*Id.*) This was the last day Ms. Allain worked for Mr. Miller. (*Id.*)

4

Ms. Allain testified that throughout her employment she wanted to quit but felt trapped in the job because she was supporting her two children and needed the income. (ECF No. 15-1 at 5.) She looked for other jobs but could not find anything with the same salary. (*Id.*) She tried many ways to avoid contact with Mr. Miller, including requesting remote work. (*Id.* at 6-7.) The sexual harassment she experienced at the hands of her boss caused her severe emotional distress and suffering. (*Id.*) Ms. Allain testified that she was too ashamed and scared to tell her family or friends about the abuse she was experiencing at work. She was "sickened" by the way Mr. Miller treated her; it caused her to "suffer from sleeplessness, anxiety, and irritability," and she felt "physically ill" every morning when she arrived at work. (*Id.* at 3-4.) Ms. Allain described Mr. Miller's behavior as resulting in the pervasive trauma she continues to experience. She further described the trauma as feeling like Mr. Miller "destroyed a piece of [her]." (*Id.* at 6-7.) She wanted and needed therapy to process the trauma of working for Mr. Miller but could not afford psychiatric care after losing her job. (*Id.* at 7.) She continues to endure the harmful impact of Mr. Miller's actions. (*Id.*)

Ms. Allain struggled to find employment after Mr. Miller terminated her. (*Id.*) In July 2021, she signed up to work as an Instacart delivery driver. (*Id.*) She made very little money in this role and quit in January of 2022. (*Id.* at 7-8.) Her gross earnings at Instacart were $2,676.33. (ECF No. 33 at 2.) From March 2022 to September 2022, she worked for TransAmerica. (ECF No. 15-1 at 7-8.) Her gross earnings at TransAmerica were $26,238.34. (ECF No. 33 at 2.) In September 2022, after leaving TransAmerica, she was hired by TD Bank where her salary exceeds what she earned working for Mr. Miller. (*Id.*)

**B.     Procedural History**

On August 5, 2022, Ms. Allain filed this lawsuit, asserting claims for sex discrimination under the PHRA (Count One); sexual harassment under the PHRA (Count Two); Assault (Count Three); battery (Count Four); Fair Labor Standards Act (Count Five); Wage Payment & Collection (Count Six); and PA Minimum Wage Act (Count Seven).[5, 6] (ECF No. 1.) After repeated failed attempts to serve her Complaint on Defendants, the Court Ordered alternative service. (ECF No. 7.) On October 12, 2022, Ms. Allain served Defendants according to the Order for alternative service, by posting the Complaint on Defendants' front door and garage. (ECF No. 8.) The service address served as both Mr. Miller's home and the office for the Entity Defendant. (ECF No. 18 at 1-2.) Defendants failed to timely answer or otherwise respond to the Complaint, and on December 6, 2022, the Clerk of Court entered default against Defendants upon Plaintiff's request. (ECF No. 11.) That same day, December 6, 2023, Mr. Miller called Plaintiff's counsel regarding this case, indicating Defendants were aware of and had actual notice of the Complaint. (ECF No. 15-2 at 1-2.)

Ms. Allain filed her Motion for Default Judgment (the "Motion") on January 11, 2023. (ECF No. 15.) Defendants again failed to respond to Plaintiff's Motion. On March 23, 2023, the Court Ordered a hearing on the issue of damages to be held on April 20, 2023. (ECF No. 22.) Ms. Allain served the damages hearing Order and Motion on Defendants on March 24, 2023 and March

---

[5] In her Motion for Default Judgment, Plaintiff dropped the FLSA charge (Count Five) and addressed only Counts I, II, III and IV. (ECF No. 15 at 5 n.1).

[6] On August 3, 2021, Ms. Allain timely filed a Charge with the Pennsylvania Human Relations Commission for violations of the Pennsylvania Human Relations Act ("PHRA"). (ECF No. 1 at 2.) In compliance with the PHRA, Ms. Allain waited more than one year from filing her PHRA charge to initiate this case. (*Id.*)

31, 2023, pursuant to the alternative service Order, by posting both on Defendants' doors. (ECF Nos. 23-25.) On April 20, 2023, the Court held a damages hearing. (ECF No. 34.) Despite ample notice and proper service, Defendants again failed to appear.[7] The Court granted Ms. Allain's Motion for Default as to liability (ECF No. 32) and now addresses the issue of damages.

Ms. Allain requested damages in the following amounts: (1) Economic Damages of $35,010.38 in lost wages; (2) Noneconomic Damages of $500,000 for pain and suffering based on her assault and battery claim; and (3) a 1:1 ratio of punitive damages to the economic and noneconomic damages, in the amount of $535,010.38 in punitive damages. (ECF No. 15 at 13-15; ECF No. 33.) Ms. Allain also seeks $54,176.00 in attorney's fees (ECF No. 33 at 8) and $1,132.76 in filing and service costs (ECF No. 39) pursuant to Federal Rule of Civil Procedure 54(d)(2).

## III.  LEGAL STANDARD

"The factual allegations in a complaint, <u>other than those as to damages</u>, are treated as conceded by the defendant for purposes of a default judgment." *Star Pac. Corp. v. Star Atl. Corp.*, 574 F. App'x 225, 231 (3d Cir. 2014) (quoting *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005)); *Bryant v. Raddad*, No. 2:21-cv-01116-JDW, 2023 U.S. Dist. LEXIS 150978, at *8 (E.D. Pa. Aug. 25, 2023) (same). When entering default judgment, a court must consider "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Bryant v. Raddad*, No.

---

[7] On April 20, 2023, after the damages hearing had concluded, Mr. Miller filed a handwritten letter in person with the Clerk of Court for the Eastern District of Pennsylvania, stating that he attempted to attend the damages hearing, but forgot his identification and could not enter the courthouse. (ECF No. 31.) At no point did Mr. Miller contact the Court via telephone or email to notify the Court of these issues.  Mr. Miller had ample notice of the hearing, evidenced by his presence in the Courthouse on April 20, 2023, and continued to be non-responsive to court filings and notices. Mr. Miller's *pro se* status does not excuse his failure to participate in the litigation. *See Jimenez v. Rosenbaum-Cunningham*, No. 07-1066, 2010 U.S. Dist. LEXIS 31664, at *23 (E.D. Pa. Mar. 31, 2010).

2:21-cv-01116-JDW, 2023 U.S. Dist. LEXIS 150978, at *8 (E.D. Pa. Aug. 25, 2023) (quoting *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citation omitted)).

A default judgment, however, "does not establish liability for the amount of damages claimed by the plaintiff." *Williams*, No. 14-6347, 2016 U.S. Dist. LEXIS 113730 AT *11-12. "If the damages are not for a 'sum certain or for a sum which can by computation be made certain,' the 'court may conduct such hearings or order such references as it deems necessary and proper.'" *Id.* (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citation omitted) (quoting Fed. R. Civ. P. 55(b)(1)-(2))).

## IV.     CONCLUSIONS OF LAW

The Court has jurisdiction over this case based upon diversity of citizenship. 28 U.S.C. § 1332.  The Court finds all factual allegations in the Complaint, other than those as to damages, are true.  Ms. Allain has established Defendants' liability for sex discrimination and sexual harassment under the PHRA (Counts I and II), for assault and battery (Counts III and IV); and for lost wages (Counts VI and VII), for purpose of issuing a default judgment pursuant to Federal Rule of Civil Procedure 55. (ECF No. 32.) Because default judgment has already been entered, the only remaining question is the amount of damages to be awarded to the Plaintiff.  To quantify damages, the Court relies upon the totality of the evidence provided in Ms. Allain's testimony, and all exhibits filed in support of her Complaint, Motion for Default Judgment, and Supplementary Briefing in reaching its conclusions. (ECF Nos. 1, 15, 33, 39.)

### A.     Compensatory Damages - Economic

Ms. Allain requested that she be awarded damages in the amount of $35,010.38 for lost wages, arising from her claims for sexual harassment and sex discrimination under the PHRA. (ECF 33 at 2).  The PHRA permits the award of compensatory damages for lost wages. *Griffiths*

8

*v. Cigna Corp.*, 857 F. Supp. 399, 409 (E.D. Pa. 1994) (citing Pa. Stat. Ann. tit. 43, § 962(c)(3) (West Supp. 1994)). The PHRA provides that, where a defendant is found to have violated the statute:

> [T]he court shall enjoin the respondent from engaging in such unlawful discriminatory practice and order affirmative action which may include, but is not limited to, reinstatement or hiring of employees, granting of back pay, or any other legal or equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than three years prior to the filing of a complaint charging violations of this act.

43 Pa. Stat. Ann. § 962(c)(3). There is no cap on compensatory damages for claims arising under the PHRA. *Fillman v. Valley Pain Specialists, P.C.*, No. 13-cv-01609, 2016 U.S. Dist. LEXIS 5182, at *17 n.1 (E.D. Pa. Jan. 14, 2016); *see also Gagliardo v. Connaught Labs., Inc.*, 311 F.3d 565, 570-71 & n.3 (3d Cir. 2002).

Ms. Allain calculated her lost wages by determining the amount she would have earned should she have remained employed by Defendants for the 483 days up until she was hired in her current position with TD Bank. (ECF No. 33.) Ms. Allain then subtracted her earnings from Instacart and TransAmerica, during her period of underemployment, from the total amount she would have earned had she remained employed by Defendants.[8] (ECF No. 33 at 2.) The Court

---

[8] Ms. Allain's lost wages calculation is as follows:
- Days employed full-time by Defendants (May 8, 2020 – May 7, 2021): 364 days
- Days between employment by Defendants and TD Bank (her current job in which her wages exceed what she earned while employed by Defendants) (May 8, 2021, to September 3, 2022): 483 days
- Total earnings from full-time employment by Defendants: $48,175.00
- Average daily earnings from Defendants' full-time employment: $48,175 ÷ 364 = $132.35/day.
- Lost wages for period between employment by Defendants and TD Bank: $132.35 x 483 days = $63,925.05
- Total earnings during unemployment/underemployment period from Instacart and TransAmerica: $28,914.67
- Total lost wages from May 8, 2021 to September 3, 2022: $63,925.05 - $28,914.67 = $35,010.38.

(ECF No. 33.)

finds Ms. Allain's calculation of lost wages to be accurate and awards lost wages pursuant to the PHRA in the requested amount of $35,010.38.

      **B.     Compensatory Damages – Noneconomic**

Ms. Allain requests a damages award of $500,000 for her pain and suffering. Compensatory damages for emotional harm, pain, and suffering are available in claims for assault and battery. *See, e.g. Schall v. Vazquez*, 322 F. Supp. 2d 594, 602 (E.D. Pa. 2004) ("a plaintiff may recover compensatory damages on a claim for civil battery based on physical injuries as well as emotional injuries such as feelings of shock, fright, or humiliation."); *Lopez v. Sromovsky*, No. 17-2183, 2018 U.S. Dist. LEXIS 107388, at *17 (E.D. Pa. June 27, 2018) (same); *see also Rios v. Marv Loves 1*, No. 13-CV-1619, 2015 U.S. Dist. LEXIS 116758, at *42 (E.D. Pa. Sep. 2, 2015) (awarding plaintiff compensatory damages for pain and suffering as a result of sexual harassment and assault by employer in assault and battery case).

With regard to calculating noneconomic damages, the Third Circuit's Model Jury Instructions for harassment and hostile work environment under Title VII[9] note that in assessing damages for pain and suffering,

> [A jury] may award damages for any pain, suffering, inconvenience, mental anguish, or loss of enjoyment of life that [plaintiff] experienced as a consequence of [defendant's] [allegedly unlawful act or omission]. No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage.

Third Circuit Model Civil Jury Instruction 5.4.1, rev. Jun. 2023. In cases involving workplace sexual harassment, discrimination, assault and battery, Courts have issued a wide range of awards for compensatory damages. *See, e.g. Mironova v. Pasquale Damarinos Inc.*, 2014 WL 2152648

---

[9] *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1084 (3d Cir. 1995) ("The [PHRA] is construed consistently with interpretations of Title VII.").

(S.D.N.Y. May 6, 2014) (jury verdict of $1,500,000 in compensatory damages for female bartender where supervisor sexually harassed, discriminated against, threated, and assaulted her repeatedly); *Pelesky v. Holdings Acquisition Co, L.P.*, 2015 WL 5173923 (W.D. Pa. Aug. 13, 2015) (awarding $150,000 in compensatory damages to female casino employee who was inappropriately touched by a patron, and then harassed in an ongoing way when the employer failed to ban the customer); *Rios v. Marv Loves 1*, No. 13-CV-1619, 2015 U.S. Dist. LEXIS 116758, at *1 (E.D. Pa. Sep. 2, 2015) (default judgment awarding female bartender $10,000 in compensatory damages where supervisor subjected her to unwelcome sexual advances, harassment, and touching).

Ms. Allain has established, via compelling, credible sworn testimony and affidavits, that she has suffered pain, mental anguish, and loss of enjoyment of life as a result of Mr. Miller's pervasive sexually predatory behavior. Ms. Allain testified that she has suffered from severe emotional and psychological distress, a loss of self-esteem, and continuing anxiety and depression as a result of Defendants' conduct. (ECF No. 15-1.) Specifically, Mr. Miller's "traumatic attacks" made Ms. Allain feel "trapped" in in the work environment, "sickened" by what she lived through, and as though "he destroyed a piece of [her]." (*Id.*) Ms. Allain also suffered from "sleeplessness, anxiety, and irritability" as a result of Defendants' actions. (*Id.*) She "lost [her] ability to trust" and continues to "need psychiatric treatment" but cannot afford it. (*Id.*) In light of Plaintiff's testimony, the Court finds there is sufficient evidence to support an award of damages for emotional distress in the amount of $200,000.

### C. Punitive Damages

Plaintiff requests the Court award punitive damages in a 1:1 ratio with compensatory damages. This request is well within the bounds of the due process clause. The Third Circuit has

upheld punitive damages awards five times greater than compensatory damages. *See, e.g. Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A.*, 801 F.3d 347, 366 (3d Cir. 2015). While the U.S. Supreme Court has declined to provide a bright line punitive to compensatory damages ratio for due process purposes, it has noted that "[s]ingle-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution." *Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A.*, 801 F.3d at 366 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003)).

Punitive damages[10] for assault and battery are available under Pennsylvania state law, including against an entity defendant under a theory of vicarious liability for the actions of its agent. *Miller v. TJX Cos.*, No. 19-252, 2019 U.S. Dist. LEXIS 39938, at *7-8 (E.D. Pa. Mar. 12, 2019). Under Pennsylvania law, punitive damages may be awarded if "'the defendant has: (1) acted in an outrageous fashion (2) due to either the defendant's evil motive or his reckless indifference (3) to the rights of others.'" *Miller*, No. 19-252, 2019 U.S. Dist. LEXIS 39938, at *7-8 (quoting *Phillips v. Cricket Lighters*, 883 A.2d 439, 445 (Pa. 2005)). "A plaintiff may be entitled to punitive damages when she adduces evidence showing that 'the defendant's acts amounted to intentional, willful, wanton or reckless conduct." *Id.* "Reckless indifference is characterized by conduct that 'creates an unreasonable risk of physical harm to another [that is] substantially greater than that which is necessary to make his conduct negligent.'" *Id.* "The same standard applies for the imposition of punitive damages against a defendant for its agent's actions." *Id.* (citing *Achey*

---

[10] Punitive damages are not available under the PHRA. *See Robbins v. Phila. Sports Club*, No. 05-2676, 2005 U.S. Dist. LEXIS 32074, at *13-14 (E.D. Pa. Dec. 9, 2005) (adopting Supreme Court of Pennsylvania's ruling in *Hoy v. Angelone* that punitive damages are not available under the PHRA); *Hoy v. Angelone*, 554 Pa. 134, 720 A.2d 745,751 (Pa. 1998) ("in the absence of express statutory language or any further legislative guidance, we hold that punitive damages are not available under the [Pennsylvania Human Relations] Act.").

*v. Crete Carrier Corp.*, No. 07-3592, 2009 U.S. Dist. LEXIS 44353, at *10 (E.D. Pa. Mar. 30, 2002)). "A [defendant] may be held vicariously liable for the punitive damages of its agents if the actions of the agent were: (1) clearly outrageous, (2) were committed during and within the scope of the agent's duties, and (3) were done with the intent to further the principal's interests." *Id.* (citing *Loughman v. Consol-Pennsylvania Coal Co.*, 6 F.3d 88, 101 (3d Cir. 1993).

Mr. Miller's rampant sexual harassment, assault, and battery of Ms. Allain was objectively outrageous. The vulgar comments, lewd text messages, and physical assaults Mr. Miller perpetrated upon Ms. Allain were intentional and undertaken without regard for the physical and emotional harm they caused her. Because Mr. Miller was acting in his role as Ms. Allain's employer when he perpetrated the acts at issue, and because he is the sole principal of the Entity Defendant, the intent behind his actions to further his own interests cannot be separated from his intent to further the business's interests. As such, the Entity Defendant, Mark Miller Custom Builder Enterprises LLC, is vicariously liable for Mr. Miller's actions. Further, Mr. Miller's actions are the exact type of behavior punitive damages are intended to deter. For these reasons, the Court grants Plaintiff's request that a 1:1 ratio of punitive and compensatory damages be awarded and finds Defendants jointly and severally[11] liable for $200,000 in punitive damages.

D.   **Attorney's Fees**

The court finds that Ms. Allain's request for attorney's fees and costs are reasonable. An award of reasonable attorney's fees is authorized under the PHRA. 43 Pa. Stat. Ann. § 962(c.2). The reasonableness of an award of attorney's fees is generally assessed according to the lodestar method in statutory fee-shifting cases. *See, e.g.*, *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001). The lodestar method requires courts to calculate the reasonable number of

13

hours expended multiplied by a reasonable hourly rate. *United Auto. Workers Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 290 (3d Cir. 2007). The Third Circuit has advised that courts should exclude "excessive, redundant, or otherwise unnecessary" hours from these fee awards. *Loughner*, 260 F.3d at 178; *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Having reviewed counsel's timekeeping records and accompanying declarations, the Court finds that the number of hours expended, the hourly rates of counsel and the amount of costs spent are reasonable. Therefore, the Court awards $54,176.00 in attorney's fees and $1,132.76 in costs. (ECF No. 33 at 8; ECF No. 33-7; ECF No. 33-8; ECF No. 39.)

## V.     CONCLUSION

Taking into consideration the totality of the evidence provided by Ms. Allain, the Court finds Defendants jointly and severally liable to Ms. Allain for damages in the total amount of **$490,319.14**. This includes: (1) $35,010.38 in lost wages; (2) $200,000 for pain and suffering; (3) $200,000 in punitive damages; (4) $54,176.00 in attorney's fees; and (5) $1,132.76 in costs. The Court further awards post-judgment interest at the rate of 5.33% pursuant to 28 U.S.C. §1961. An appropriate Order follows.